Slip Op. 10-69

UNITED STATES COURT OF INTERNATIONAL TRADE

AMANDA FOODS (VIETNAM) LTD.,
*et al.*,

                    Plaintiffs,

          -v-

UNITED STATES,                    Before: Pogue, Judge

                    Defendant,    Consol. Court No. 08-00301

          - and -

AD HOC SHRIMP TRADE
ACTION COMMITTEE,

                    Defendant-Intervenor.

<u>OPINION AND ORDER</u>

[Remand to Department of Commerce for further consideration of appropriate separate rates for non-individually investigated respondents]

                              Dated: June 17, 2010

     <u>Mayer Brown LLP</u> (<u>Matthew J. McConkey</u> and <u>Jeffery C. Lowe</u>) for Plaintiff Amanda Foods (Vietnam) Ltd.

     <u>Thompson Hine LLP</u> (<u>Matthew R. Nicely</u> and <u>Christopher M. Rassi</u>) and <u>Winston & Strawn LLP</u> (<u>William H. Barringer</u> and <u>Valerie S. Ellis</u>) for Consolidated Plaintiffs Ca Mau Seafood Joint Stock Company; Cadovimex Seafood Import-Export and Processing Joint-Stock Company; Cafatex Fishery Joint Stock Corporation; Can Tho Agricultural and Animal Products Import Export Company; Coastal Fisheries Development Corporation; C.P. Vietnam Livestock Co., Ltd.; Cuulong Seaproducts Company; Danang Seaproducts Import Export Corporation; Investment Commerce Fisheries Corporation; Minh Hai Export Frozen Seafood Processing Joint-Stock Company; Minh Hai Joint-Stock Seafoods Processing Company; Ngoc Sinh Private Enterprise; Nha Trang Fisheries Joint Stock Company; Nha Trang Seaproduct Company; Phu Cuong Seafood Processing & Import-Export Co., Ltd.; Sao Ta Foods Joint Stock Company; Soc Trang Aquatic Products and General Import-Export Company; Thuan Phuoc Seafoods and Trading Corporation; UTXI Aquatic Products

Processing Company; Viet Foods Co., Ltd.; Kim Anh Co., Ltd.; Phuong Nam Co., Ltd.

    <u>Tony West</u>, Assitant Attorney General; <u>Jeanne E. Davidson</u>, Director; <u>Franklin E. White, Jr.</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Stephen C. Tosini</u>), and, of counsel, <u>Jonathan M. Zielinski</u>, Senior Attorney, Office of the Chief Counsel for Import Administration, Department of Commerce, for Defendant United States.

    <u>Picard Kentz & Rowe LLP</u> (<u>Andrew W. Kentz</u> and <u>Nathaniel M. Rickard</u>)for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

    **Pogue, Judge:** This consolidated action is again before the court following the initial remand of the final results of the second administrative review of the antidumping duty order covering frozen warmwater shrimp from the Socialist Republic of Vietnam.[1]  Plaintiffs are cooperative non-investigated respondents in the administrative review who have established their entitlement to a separate rate.  In the review, the United States Department of Commerce ("Commerce" or "the Department") determined Plaintiffs' dumping margins to be equal to the nonzero rates assigned to Plaintiffs in the investigation underlying this order, rather than to the weighted average of margins calculated for the individually-investigated respondents.  All individually-

_____

    [1] See <u>Amanda Foods (Vietnam) Ltd. v. United States</u>, __ CIT __, 647 F. Supp. 2d 1368, 1374-75, 1379-82 (2009)("<u>Amanda I</u>")(remanding <u>Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam</u>, 73 Fed. Reg. 52,273 (Dep't Commerce Sept. 9, 2008)(final results and final partial rescission of antidumping duty administrative review) ("<u>Final Results</u>")).

investigated respondents' margins were zero or *de minimis*.  In

Amanda I, the court remanded Commerce's decision, directing the

Department to assign to Plaintiffs the weighted average of the

mandatory respondents' rates, or to provide justification, based

on substantial evidence on the record, for using another rate.[2]

Amanda I, ___ CIT at ___, 647 F. Supp. 2d at 1382.

As explained more fully below, by imputing to cooperative

respondents the behavior of uncooperative respondents, Commerce

has failed to comply with the court's remand order in Amanda I.

The Department has again failed to provide a rational connection

between the facts found and the rates applied.  Accordingly, the

court again remands to Commerce the question of appropriate

antidumping duty rates for Plaintiffs.

## BACKGROUND

A.    Amanda I

Commerce's choice of assessment rate for cooperative non-

investigated respondents in the second review of this antidumping

duty order is fully chronicled in the court's opinion in Amanda

I, 647 F. Supp. 2d at 1374-75.  Briefly:

---

[2] While some of the court's conclusions are summarized in
the Background section of this opinion, familiarity with the
court's decision in Amanda I is presumed.  All other issues
originally raised by Plaintiffs in this consolidated action have
been dismissed pursuant to stipulation between the parties. (See
Stipulation of Partial Dismissal [Dkt. No. 83]; Order of
Dismissal [Dkt. No. 84].)

> [R]ather than averaging the two mandatory respondents'
> [zero and *de minimis*] rates and using the resulting
> average for the separate rate companies, Commerce
> assigned to the separate rate companies the most recent
> rate that each had received in a prior proceeding.
> Specifically, the Department applied the rate that the
> separate rate companies had received in the original
> investigation, based on sales made prior to the
> imposition of the dumping order . . . .

Id. at 1374 (citing Final Results, 73 Fed. Reg. at 52,275-76).[3]

In Amanda I, the court noted that "[t]he sole reasoning that

the Department provided for this decision was that thirty-five

companies received margins based on [adverse facts available

("AFA")] and that 'the circumstances of this review are similar

to those of the preceding review.'" Id. at 1381 (quoting Final

Results, 73 Fed. Reg. at 52,275 and citing Issues & Decision

Mem., A-552-802, 2d AR 02/01/06-01/31/07 (Sept. 2, 2008), Admin.

R. Pub. Doc. 231 ("I & D Mem.")).

The court found this analysis insufficient, concluding that

"there is no basis in the [antidumping] statute for penalizing

cooperative uninvestigated respondents due solely to the presence

of non-cooperative uninvestigated respondents who receive a

margin based on AFA," id. (citing Yantai Oriental Juice Co. v.

United States, 27 CIT 477, 487 (2003)), and that "nowhere in the

---

[3] Separate rate companies that were individually examined in the first administrative review of this antidumping duty order were assigned the rate they received in the first review. Final Results, 73 Fed. Reg. at 52,275-76. However, none of the rates assigned based on rates from the first review are at issue in this case. See *supra* note 2.

record [did] Commerce provide sufficient reasoning linking the

evidence to its conclusion that margins . . . established during

the period of investigation, prior to the imposition of the

antidumping duty order, are 'based on the best available

information and establish[] [the relevant] antidumping margins as

accurately as possible,'" id. at 1382 (quoting Shakeproof

Assembly Components, Div. of Ill. Tool Works, Inc. v. United

States, 268 F.3d 1376, 1382 (Fed. Cir. 2001)).[4]


B.    Remand Results

       In its remand redetermination, the Department continues to

defend as reasonable its decision "to assign the margin of 4.57

percent, the margin calculated for cooperative separate rate

respondents in the underlying investigation, to the separate rate

respondents in the instant review with no history of a calculated

_____

       [4] While the Court of Appeals for the Federal Circuit has
noted that the requirement that Commerce use the "best available
information" may not always be helpful and unambiguous, see
Dorbest Ltd. v. United States, Nos. 2009-1257, 2009-1266, 2010 WL
1931677, at *7 (Fed. Cir. May 14, 2010), and that this
requirement may not be used to demand of Commerce more than is
expressly required by more specific relevant provisions of the
antidumping statute, see id. at *8, it remains the case that, to
be supported by substantial evidence, Commerce's determinations
must be supported by a rational link to information which may be
used to help approximate respondents' actual pricing behavior,
and that Commerce does not have discretion to select dumping
margins "with no relationship to the respondent's actual dumping
margin." F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v.
United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

margin," Final Results of Redetermination Pursuant to Court
Remand (Mar. 3, 2010)("Remand Results") at 13, as well as its
decision to assign to Minh Hai Joint-Stock Seafoods Processing
Company a margin of 4.30 percent, the rate received by this
company in the original investigation, based on its own data. See
id. at 4, 22.

The Department argues that Section 735(c)(5) of the Tariff
Act of 1930, as amended, 19 U.S.C. § 1673d(c)(5)(2006)[5] (the
"all-others rate" provision for investigations) – the statutory
provision upon which the Department usually relies in
establishing dumping margins for cooperative respondents not
selected for individual examination in an administrative review[6]
– "articulates a preference that the Department avoid zero, *de
minimis* rates or rates based entirely on facts available" when it
determines the appropriate dumping margins for cooperative
uninvestigated respondents. Id. at 14. Further, Commerce
contends that the existence in the record of "evidence of dumped
sales in the prior [period of review ("POR")] and instant POR,"
id. at 15, renders reasonable the agency's choice of dumping

---

[5] Further citation to the Tariff Act of 1930, as amended, is
to Title 19 of the U.S. Code, 2006 edition.

[6] See, e.g., Longkou Haimeng Mach. Co. v. United States, __
CIT __, 581 F. Supp. 2d 1344, 1359 (2008)(discussing and
upholding this practice as in accordance with the statutory
scheme).

margins for Plaintiffs, <u>see</u> <u>id.</u> at 15-18, because "selecting
rates from prior segments . . . reasonably reflects the existence
of dumping under the order[.]" <u>Id.</u> at 18.

The Department points to four particulars in the record as
evidence supporting the dumping margins assigned to Plaintiffs
for the POR in question – the fact that two mandatory respondents
received rates based on AFA in the first review; transaction-
specific above-*de minimis* dumping margins for at least one
mandatory respondent in the second review; the existence of
uncooperative respondents in the second review; and the fact that
some of the subject merchandise entered during the POR came from
producers/exporters who were assessed cash deposit rates based on
AFA but who nevertheless did not request to be reviewed. <u>Id.</u> at
16-18.

Plaintiffs contend that the Department has failed to comply
with the court's order in <u>Amanda I</u> because the margins assigned
are not supported by substantial evidence on the record. (<u>See
generally</u> Comments on Final Results of Redetermination Pursuant
to Ct. Remand on Behalf of [Pls.] ("Pls.' Comments").)
Specifically, Plaintiffs argue that Commerce continues to offer
as evidence the imputation of dumping to Plaintiffs based on the
presence of uncooperative respondents in the first and second
reviews, despite the court's holding in <u>Amanda I</u> that this fact
alone cannot constitute substantial evidence supporting the

reasonableness of margins assigned to cooperative Plaintiffs. (See Pls.' Comments at 2-4, 6-8.)  With regard to Commerce's reliance on transaction-specific dumping margins found for one of the mandatory respondents, Plaintiffs argue that "Commerce cannot have it both ways; it cannot assign an overall *de minimis* margin to mandatory respondents, yet use individual comparisons from those respondents' margin calculations to justify application of an above-*de minimis* margin to non-mandatory respondents." (Id. at 5.)

## STANDARD OF REVIEW

"The court will sustain the Department's determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." Jinan Yipin Corp. v. United States, __ CIT __, 637 F. Supp. 2d 1183, 1185 (2009) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

"Substantial evidence" is "such evidence as a reasonable mind might accept to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quotation marks and citations omitted).  "The specific determination [the court] make[s] is whether the evidence and reasonable inferences from the record support [Commerce's] finding." Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Technical, Salaried & Mach. Workers, AFL-CIO, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal quotation

marks and citation omitted).  That is, "[a] factual finding is
supported by substantial evidence when the factfinder could
rationally draw support for the finding from the relevant record
evidence." Penrod Drilling Co. v. Johnson, 905 F.2d 84, 87 (5th
Cir. 1990).  Further, to be supported by substantial evidence,
agency findings must be "reached by reasoned decision-making,
including . . . a reasoned explanation supported by a stated
connection between the facts found and the choice made." Elec.
Consumers Res. Council v. Fed. Energy Regulatory Comm'n, 747 F.2d
1511, 1513 (D.C. Cir. 1984) (citing Burlington Truck Lines, Inc.
v. United States, 371 U.S. 156, 168 (1962)) (quotation marks and
additional citations omitted).

## DISCUSSION

The court first considers the legal premise for Commerce's
remand decision, concluding that the agency's statutory
construction is not reasonable and therefore not entitled to
Chevron deference.[7]  The court then examines the evidentiary

---

[7] To the extent that Commerce's determination depends upon a
particular construction of its statutory authority, the court
first looks to whether "Congress has directly spoken to the
precise question at issue," Chevron, U.S.A. Inc. v. Natural Res.
Def. Council, Inc., 467 U.S. 837, 842 (1984), using traditional
tools of statutory construction. Id. at 843 n.9; see also Timex
V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998)
(citation omitted)).  "[I]f the text answers the question, that
is the end of the matter." Timex, 157 F.3d at 882 (citations
omitted).  If, after using traditional tools of statutory

bases for the Department's remand decision, concluding that the

dumping margins assigned to Plaintiffs on remand are not

supported by substantial evidence.

A.   <u>Commerce's Statutory Construction on Remand is Not Entitled
     to Deference.</u>

     No statutory or regulatory provision directly addresses the

methodology to be employed when calculating a dumping margin for

companies not selected for individual investigation where

Commerce limits its examination in an administrative review.

Instead, as noted above, Commerce generally relies on the "all

others rate" provision governing investigations under the

antidumping statute, 19 U.S.C. § 1673d(c)(5). <u>Remand Results</u> at

14 ("Generally we have looked to [19 U.S.C. § 1673d(c)(5)], which

provides instructions for calculating the all-others rate in an

investigation, for guidance when calculating the rate for

respondents we did not examine individually in an administrative

_____

construction, the court cannot conclude that the statute itself
answers the question at issue, then Commerce's statutory
interpretation is entitled to deference so long as it is
reasonable. <u>See</u> <u>United States v. Mead Corp.</u>, 533 U.S. 218, 229
(2001); <u>Chevron</u>, 467 U.S. at 843; <u>Pesquera Mares Australes Ltda.
v. United States</u>, 266 F.3d 1372, 1382 (Fed. Cir. 2001)
("[S]tatutory interpretations articulated by Commerce during its
antidumping proceedings are entitled to judicial deference under
<u>Chevron</u>."); <u>Koyo Seiko Co. v. United States</u>, 36 F.3d 1565, 1573
(Fed. Cir. 1994) ("In a situation where Congress has not provided
clear guidance on an issue, <u>Chevron</u> requires us to defer to the
agency's interpretation of its own statute as long as that
interpretation is reasonable.").

review."). <u>See also</u> <u>Final Results</u>, 73 Fed. Reg. at 52,274

(characterizing the Department's practice in this regard in

language mirroring that found in 19 U.S.C. § 1673d(c)(5)); <u>I & D</u>

<u>Mem.</u> at 18-19 (relying on 19 U.S.C. § 1673d(c)(5) and its

accompanying provision in the Statement of Administrative Action

to justify choice of separate rate in this case); <u>Longkou</u>, ___ CIT

___, 581 F. Supp. 2d at 1359 (discussing and upholding this

practice as in accordance with the statutory scheme).

When Commerce interpreted this all-others rate provision in

its remand determination, it concluded that the provision

generally disfavors the use of zero and *de minimis* margins in

calculating dumping margins for cooperative uninvestigated

companies. <u>Remand Results</u> at 26.  Commerce then relied on this

interpretation in deciding not to base the dumping margins

assigned to Plaintiffs on the zero and *de minimis* margins found

for all individually investigated respondents in the second

review. <u>Id.</u> ("It is because of the statute's clear preference to

avoid using *de minimis*/zero and AFA rates in the [all-others

rate] average that we have not used any of these rates in

assigning a rate to the non-examined companies.").[8]

_____

[8] <u>See also</u> <u>Remand Results</u> at 14-15 (arguing that 19 U.S.C.
§ 1673d(c)(5) "articulates a preference that the Department avoid
zero, *de minimis* rates or rates based entirely on facts available
when it determines the all others rate," and explaining that "the
Department [therefore] consistently seeks to avoid the use of
total facts available, zero and *de minimis* margins in determining

In reviewing a decision which the agency seeks to justify as compelled or preferred by a particular statutory provision, the court first looks to the text of the statute, to determine whether "Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. See also Timex, 157 F.3d at 882.

The statutory provision at issue, Section 1673d(c)(5), provides a general rule and an exception:

(A) General rule

    For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title.

---

non-selected rates in administrative reviews, in order to implement this statutory preference"); id. at 22-23 ("[T]he statute clearly disfavors the use of de minimis or zero margins in the calculation of the 'all-others' average rate in an investigation. . . . As we . . . calculated only zero and de minimis rates for the individually examined respondents . . ., we considered the statutory preference to avoid the use of these rates in the average. . . . Therefore, taking guidance from [19 U.S.C. § 1673d(c)(5)] addressing circumstances where the Department calculates zero or de minimis rates, . . . rather than using these disfavored rates, we looked to another reasonable method to assign rates to non-individually examined respondents."); (Def.'s Resp. to Pls.' Remand Comments ("Def.'s Resp.") at 5 ("Commerce explained that 19 U.S.C. § 1673d(c)(5), to which Commerce refers for guidance regarding how to assign rates to separate rate companies, expresses a preference for not relying upon rates that are zero, de minimis, or based entirely upon facts available. . . . [T]his statutory preference . . . supports Commerce's methodology.")).

(B) Exception

> If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e of this title, [Commerce] may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

19 U.S.C. § 1673d(c)(5)(A) & (B).

By its plain terms, this statutory provision's intended application is to administrative proceedings covered under Sections 1673b and 1673d of Title 19 – that is, to preliminary and final determinations in investigations of sales at less than fair value underlying the imposition of an antidumping duty order. Therefore, the court cannot conclude that "Congress has directly spoken [in this provision or elsewhere in the antidumping statute] to the precise question at issue," Chevron, 467 U.S. at 842 – i.e., the court cannot conclude that Congress has directly addressed the issue of whether Commerce must avoid using zero or de minimis dumping margins, to the extent that other rates are available, when calculating dumping margins for cooperative non-individually investigated companies in an administrative review. Accordingly, the court must determine whether Commerce's statutory interpretation is reasonable and therefore entitled to deference. See id. at 843-44. As explained

below, the court concludes that it is not.

Commerce interprets Section 1673d(c)(5) to provide a general congressional preference, applicable both in investigations and administrative reviews, that Commerce avoid using zero or *de minimis* margins to the extent possible when assigning dumping margins to cooperative uninvestigated respondents. See Remand Results at 26.[9]  However, subsection 1673d(c)(5)(B) provides an exception to the preference, expressed in subsection 1673d(c)(5)(A), for excluding zero and *de minimis* margins from the all-others rate calculation.  Subsection (B) provides, *inter alia*, that where, as here, all mandatory respondents receive zero or *de minimis* dumping margins, the rule expressed in (A) does not apply.  Subsection (B) then states that, in such cases, averaging the mandatory respondents' zero and *de minimis* dumping margins may serve as a reasonable method of establishing the all-others rate. 19 U.S.C. § 1673d(c)(5)(B).[10]

_____

[9] See also *supra* note 8.

[10] The court notes the Department's characterization that "the statute contemplates that [Commerce] may use an average of the zero, *de minimis* and rates based entirely on facts available" to arrive at an all-others rate in this case pursuant to 19 U.S.C. § 1673d(c)(5)(B). Remand Results at 15.  However, despite the presence of a rate based on AFA assigned to the Vietnam-wide entity in the second review, Final Results, 73 Fed. Reg. at 52,275, the statute states only that "dumping margins determined for the exporters and producers *individually investigated*" may be averaged to arrive at the all-others rate. 19 U.S.C. § 1673d(c)(5)(B) (emphasis added).  Because the margins for all *individually investigated* exporters/producers in the

Thus, while Commerce is correct that the statute disfavors including zero and *de minimis* margins in the all-others rate calculation *when positive non-FA-based rates for individually investigated respondents are available*, 19 U.S.C. § 1673d(c)(5)(A),[11] it is an impermissible construction of this provision to extend its disfavor to situations where, as here, "the estimated weighted average dumping margins established for *all* exporters and producers individually investigated are zero or *de minimis* margins," 19 U.S.C. § 1673d(c)(5)(B) (emphasis added). This extension is impermissible because the statute explicitly provides an exemption from the preference against using zero or

_____

instant review were zero or *de minimis*, those portions of the statute which deal with situations where some or all individually investigated companies receive rates based entirely on facts available are not applicable here.  The court will therefore refer only to those portions of the statute that deal with zero or *de minimis* margins for mandatory respondents.

[11] See Longkou, ___ CIT ___, 581 F. Supp. 2d at 1360 (upholding different treatment of mandatory respondents' zero/*de minimis* and above-*de minimis* margins for purposes of calculating the all-others rate pursuant to 19 U.S.C. § 1673d(c)(5)(A) as an "inherent and accepted part" of the statutory scheme).  The Department relies on Longkou to support its argument that a statutory preference against the use of zero/*de minimis* margins in calculating the all-others rate supports the reasonableness of Commerce's choice of separate rate in this case. Remand Results at 22-23.  However, because in Longkou the Department relied on, and the court construed, subsection (A) of section 1673d(c)(5), rather than subsection (B), the issue presented in Longkou and the holding of that case cannot support the reasonableness of the Department's reliance on subsection (B) – which creates an exception to the rule expressed in subsection (A) – in the case at bar. See Longkou, ___ CIT at ___, 581 F. Supp. 2d at 1360.

*de minimis* margins in calculating the all-others rate for the

situation at issue here. <u>Id.</u>

Simply put, when a statutory provision specifically lists

"averaging the [zero and *de minimis*] estimated weighted average

dumping margins determined for the exporters and producers

individually investigated" as the sole provided example of "a

reasonable method to establish the estimated all-others rate"

when all mandatory respondents' margins are zero or *de minimis*,

19 U.S.C. § 1673d(c)(5)(B), it is impermissible to interpret this

provision as expressing a preference against the use of such

methodology in such situations.  This must particularly be the

case when the "authoritative expression by the United States

concerning the interpretation and application of . . . this

Act"[12] expressly states that the allegedly disfavored methodology

is in fact "[t]he expected method in such cases." SAA,

1994 U.S.C.A.A.N. at 4201.[13]  In addition, Commerce's

---

[12] 19 U.S.C. § 3512(d) (referring to the Statement of
Administrative Action accompanying the Uruguay Round Agreements
Act, H.R. Doc. No. 103-316 (1994), reprinted in 1994 U.S.C.A.A.N.
4040 ("SAA")).

[13] The Department recognizes that subsection 1673d(c)(5)(B)
explicitly lists averaging the mandatory respondents' margins as
an example of a reasonable methodology for establishing the all-
others rate when all individually-investigated respondents
receive zero or *de minimis* margins. <u>See</u> <u>Remand Results</u> at 14-15.
However, the Department argues that this language applies only to
investigations, not administrative reviews. <u>Id.</u>
Commerce offers two grounds in attempting to distinguish the
circumstances of the instant administrative review from those of

interpretation effectively renders the exception a nullity.  See
Duncan v. Walker, 533 U.S. 167, 174 (2001) ("[A] statute ought,
upon the whole, to be so construed that, if it can be prevented,
no clause, sentence, or word shall be superfluous, void, or
insignificant." (citation omitted)).

Accordingly, Commerce's reliance upon an interpretation of
the statute which reads the preference expressed in subsection
1673d(c)(5)(A) into the exception to that subsection found in
subsection 1673(c)(5)(B), see Remand Results at 22-23, is

---

an initial investigation.  First, the agency argues that
subsection (B) is intended to apply only to circumstances where
the "expected method" under that subsection would be to average
zero/de minimis rates with rates based on AFA, and never solely
to average zero and de minimis rates.  See Id. at 15.  Second,
Commerce argues that averaging the margins calculated for all
individually investigated companies as the all-others rate is the
"expected method" only for investigations, where no other
potential rates, such as rates from prior segments, would be
available. See id.
     Commerce's first argument in this regard is based on an
erroneous interpretation of the law.  See supra note 9.  Because
the provision's "expected method" is to average only the rates
calculated for individually investigated companies, nothing
prevents the "expected method" of subsection (B) from resulting
in the averaging of zero and de minimis rates found for
individually investigated companies in an underlying
investigation, such as in situations where some uncooperative
non-investigated companies receive rates based on AFA. Hence
nothing necessarily distinguishes the circumstances of this
review from the kinds of circumstances to which subsection (B)
was intended to apply.  With regard to Commerce's second
argument, as the court explained in Amanda I, and reiterates
below, the availability of rates from prior segments does not in
itself suffice to support the reasonableness of applying such
rates to pricing behavior in subsequent periods of review, and
therefore does not necessarily bear on the reasonableness of
using section (B)'s expected method in a particular segment.

unreasonable and therefore not entitled to deference. <u>See</u>
<u>Chevron</u>, 467 U.S. at 845.  While section 1673d(c)(5)(A) expresses
a preference for avoiding zero and *de minimis* margins when
calculating the all-others rate for cooperative uninvestigated
respondents, subsection (B) exempts from this preference
situations where, as here, all individually investigated
respondents receive zero/ *de minimis* rates.

Contrary to Commerce's argument, therefore,
Section 1673d(c)(5) does not support Commerce's methodology for
establishing Plaintiffs' dumping margins.  As the court held in
<u>Amanda I</u>, "as a legal matter, Commerce may choose to include or
to exclude the mandatory respondents' zero or *de minimis* margins
in calculating a separate rate," 647 F. Supp. 2d at 1380, as long
as the methodology used and the rates chosen are reasonable, <u>see</u>
<u>id.</u> at 1379.  By categorically excluding the mandatory
respondents' zero and *de minimis* margins in calculating the
separate rate, the methodology used on remand was unreasonable.
A further remand is therefore required.

Moreover, even were Commerce's exclusion of the mandatory
respondents' margins from the separate rate calculation not
categorical, the court could not accept as reasonable, based on
the record here, the dumping margins assigned to Plaintiffs in
this review.  It is to the consideration of that issue that the
court now turns.

B.    Commerce's choice of dumping margins assigned to Plaintiffs
      is not supported by substantial evidence in the record.

Because the record for this review does not contain

substantial evidence sufficient to establish a reasonable link

between the rates assigned to Plaintiffs and Plaintiffs' pricing

behavior during the POR, Commerce's decision in this regard is in

any case not reasonable, especially in light of the overriding

statutory purpose of accuracy in the calculation of dumping

margins. See, e.g., Parkdale, 475 F.3d at 1380 (Commerce must

calculate dumping margins "as accurately as possible"); De Cecco,

216 F.3d at 1032 (Commerce does not have discretion to select

dumping margins "with no relationship to the respondent's actual

dumping margin"); U.S. Steel Corp. v. United States, Slip. Op.

10-28, 2010 WL 1347689, at *19 (CIT Mar. 19, 2010) ("It is well-

established that Commerce is required to calculate antidumping

duty margins as accurately as possible in each segment of a

proceeding." (citing Rhone Poulenc, Inc. v. United States, 899

F.2d 1185, 1191 (Fed. Cir. 1990))).

The Department points to four areas in the record as

evidence in support of the dumping margins assigned to Plaintiffs

in this review:

1) the existence of a 25.76 percent rate, based on AFA, for

two mandatory respondents in the first review, as "evidence that

dumping has occurred since the investigation of the underlying order," Remand Results at 16 ("Ground 1");

2) the fact that "[a]t least one of the respondents individually investigated had transaction-specific margins that were higher than the 4.57 percent rate," id. ("Ground 2");

3) the fact that "[o]f the 63 exporters covered by the review, 35 exporters did not submit quantity and value questionnaire responses at the beginning stages of the proceeding, despite confirmed receipt of each attempt [to solicit such response]," id. at 16-17, as evidence of continued dumping during the POR, at a rate presumed to be at least equal to 25.76 percent, the AFA rate assigned to unresponsive exporters ("Ground 3"); and

4) the fact that "entry data obtained from U.S. Customs and Border Protection [] shows that exporters from the Vietnam-wide entity entered subject merchandise during the POR for which a cash deposit was paid at the rate of 25.76 percent," id. at 17-18, as evidence "that the cash deposit rate is reflective of the level of actual dumping by these exporters during the POR," because "reviews were not requested by some of these exporters," id. at 18 ("Ground 4").

The court now turns to consider these evidentiary claims.

1.   *Grounds 1, 3 & 4 – Uncooperative Respondents*

Grounds 1, 3 and 4, offered as evidence in support of the dumping margins assigned to Plaintiffs in this review, are all based on evidence of the existence of uncooperative respondents in the first and/or second reviews: Ground 1 refers to the presence of uncooperative respondents in the first review;[14] Ground 3 refers to the presence of uncooperative respondents in the second review; and Ground 4 refers to the presence of uncooperative respondents in the first review who did not request to be reviewed in the second review.[15]

As the court stated in <u>Amanda I</u>, however, "the Department's reference to the existence of . . . non-cooperating companies . . . fails to justify its choice of dumping margin for the cooperative uninvestigated respondents," 647 F. Supp. 2d at 1381, and "does not provide a basis for the Department's use of results from a prior determination with respect to the cooperating companies in the present case." <u>Id.</u> at 1382.

All fully cooperative individually investigated respondents

---

[14] <u>Remand Results</u> at 16 ("[The Department] determined to apply AFA to two mandatory respondents.  As these companies refused to provide the Department with necessary information, the Department was required to resort to facts available, and applied an adverse inference, determining their dumping margins to be 25.76 percent." (citation omitted)).

[15] See <u>Remand Results</u> at 16 (explaining that the 25.76 percent rate was assigned to uncooperative respondents in the first review).

in both the first and second reviews received zero or *de minimis* rates.[16]  Accordingly, when Commerce says that it has "evidence of dumped sales in the prior POR and instant POR," Remand Results at 15, it is referring to the *presumption* of dumping with regard to the uncooperative respondents in the first and second reviews.[17]

But the presumption that uncooperative respondents engaged in dumping during the POR is just that – a presumption.  Because Commerce does not actually possess accurate information with respect to such companies' pricing behavior during the POR, the agency may presume that margins from prior segments constitute "the most probative evidence of current margins because, if it were not so, the [affected respondent], knowing of the rule, would have produced *current* information showing the margin to be less." Rhone Poulenc, 899 F.2d at 1190 (emphasis in original).[18]

---

[16] Final Results, 73 Fed. Reg. at 52,275; Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam, 72 Fed. Reg. 52,052, 52,054 (Dep't Commerce Sept. 12, 2007) (final results of the first antidumping duty administrative review and first new shipper review).

[17] When respondents fail to cooperate, Commerce presumes the existence of a positive dumping margin for such companies in order to encourage the submission of accurate information with regard to their pricing behavior during the POR. Rhone Poulenc, 899 F.2d at 1190-91.

[18] See also, e.g., Gallant Ocean (Thailand) Co. v. United States, No. 2009-1282, 2010 WL 1508198 (Fed. Cir. Apr. 16, 2010) ("An AFA rate must be 'a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase inteded as a deterrent to non-compliance.'  The purpose of the AFA rate 'is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or

In the case at bar, however, Commerce, by limiting its

examination pursuant to 19 U.S.C. § 1677f-1(c)(2)(B), has

expressly refused to accept current information from the

cooperative non-investigated separate rate companies.  It follows

that the presumption that margins established in the underlying

investigation are most probative of current dumping margins

cannot be justified on the ground that it encourages the

submission of more accurate information.[19]  A presumption used to

encourage some companies to submit more accurate information may

not reasonably be transposed onto companies which are expressly

prevented from submitting more accurate information.[20] See Rhone

_____

uncorroborated margins.'" (emphasis omitted)(quoting De Cecco,
216 F.3d at 1032)).

    [19] See also SKF USA Inc. v. United States, __ CIT __,
675 F. Supp. 2d 1264, 1276 (2009) ("Although 19 U.S.C. § 1677e(b)
does not expressly state that Commerce may not adversely affect a
party to a proceeding based upon another interested party's
failure to cooperate, a construction permitting such an absurd
result makes a mockery of any notion of fairness.  In the
specific context of the antidumping laws, a party that did not
fail to meet its obligation to cooperate, as imposed by
§ 1677e(b), is entitled by § 1675(a) and related provisions of
the antidumping law to have its margin determined accurately and
according to the relevant information on the record of the
administrative review."); id. at 1277 (admonishing Commerce for
creating a situation where a party may obtain "a margin or
deposit rate[] that is less favorable than that which would have
resulted if it had cooperated fully, even though Commerce never
found that the party did not cooperate fully as required by
§ 1677e(b)" (internal quotation marks and citation omitted)).

    [20] While Commerce argues that, because it "did not attribute
AFA rates to the non-individually examined respondents," Remand
Results at 22, its separate rate determination is not tantamount
to penalizing cooperative respondents for the non-cooperation of

<u>Poulenc</u>, 899 F.2d at 1191 (when agency presumes margins from

prior segments to be the best information regarding current

margins for uncooperative respondents, "since the presumption is

rebuttable, it achieves th[e] [] goal [of encouraging

cooperation] without sacrificing the basic purpose of the

statute: determining current margins as accurately as possible").

Moreover, a rebuttable presumption with respect to the

margins for some companies may not by itself serve as substantial

evidence supporting the accuracy of margins assigned to wholly

unrelated companies. <u>See, e.g.</u>, <u>Routen v. West</u>, 142 F.3d 1434,

1439 (Fed. Cir. 1998) ("This court has never treated a

presumption as any form of evidence." (citing <u>A.C. Aukerman Co.</u>

<u>v. R.L. Chaides Constr. Co.</u>, 960 F.2d 1020, 1037 (Fed. Cir. 1992)

("[A] presumption compels the production of [a] minimum quantum

of evidence from the party against whom it operates, nothing

more.  In sum, a presumption is not evidence." (citations

omitted)); <u>Del Vecchio v. Bowers</u>, 296 U.S. 280, 286 (1935) (a

presumption "cannot acquire the attribute of evidence in the

claimant's favor"); <u>N.Y. Life Ins. Co. v. Gamer</u>, 303 U.S. 161,

171 (1938) ("[A] presumption is not evidence and may not be given

---

others, <u>id.</u>, in actuality the Department's treatment of the
remaining Plaintiffs – essentially assigning a margin equivalent
to the highest prior margin available – appears to the court to
be no different from how it normally treats willfully non-
cooperative companies. <u>See, e.g.</u>, <u>Rhone Poulenc</u>, 899 F.2d at
1190-91.

weight as evidence."))). See also Wilner v. United States, 24
F.3d 1397, 1411 (Fed. Cir. 1994) ("Presumptions merely impose 'on
the party against whom [they are] directed the burden of going
forward with evidence to rebut or meet the presumption . . . .'"
(emphasis added) (quoting Fed. R. Evid. 301)).

Because Commerce's Grounds 1, 3 and 4 are all based
exclusively on presumptions applicable only to the parties
against whom they are made, these grounds cannot constitute
substantial evidence to support Commerce's choice of dumping
margins for Plaintiffs in the second review.

2.   Ground 2 – Transaction-Specific Margins

Second, with regard to transaction-specific, above-de
minimis margins found in the course of investigating the
mandatory respondents, suffice it to say that, if the presence of
these transaction-specific margins failed to justify assigning an
overall above-de minimis rate for the companies whose data they
embody,[21] then they certainly cannot serve to do so for the

_____

[21] The court notes that the dumping margins for the
individually investigated respondents in this review were 0.00
and 0.01 percent. Final Results, 73 Fed. Reg. at 52,275.  Thus
whatever transaction-specific dumping may have been engaged in by
the individually investigated respondents, Commerce seeks to have
this data justify the imposition of 4.30 or 4.57 percent dumping
margins for Plaintiffs for the entire POR, notwithstanding the
fact that these transaction-specific margins were evidently not
significant enough to raise the overall dumping margins of the
companies whose actual data they represent above the barest of
possible minimums.

remaining cooperative companies.

## CONCLUSION

For all of the foregoing reasons, the court concludes that Commerce's argument that "selecting rates from prior segments to apply to the nonselected companies in this review implements the statute's preference to avoid zero/*de minimis* and facts available margins," Remand Results at 18, is based on an unreasonable interpretation of the statute, and that the agency's finding that doing so "reasonably reflects the existence of dumping under the order [by Plaintiffs during the POR]," id., is not supported by substantial evidence on the record.  Accordingly, the 4.57 percent and 4.30 percent rates assigned to Plaintiffs are unsupported.

On remand, therefore, Commerce must employ a reasonable method, which may "includ[e] averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated," 19 U.S.C. § 1673d(c)(5)(B). Further, Commerce must assign to Plaintiffs dumping margins for the second POR which are reasonable considering the evidence on the record as a whole; to do so, Commerce may reopen the evidentiary record if need be.[22]

_____

[22] To the extent that the Department finds that the record does not currently contain sufficient evidence to support the reasonable accuracy of dumping margins for Plaintiffs during the POR, the court notes that neither Petitioner nor the Plaintiffs

Therefore, this matter is remanded to the agency for further consideration in accordance with this opinion. <u>See</u> 19 U.S.C. § 1516a(c)(3).  Commerce shall have until ninety (90) days from the date of this Order and Opinion to complete and file its remand redetermination.  Plaintiffs shall have until thirty (30) days from that filing to file comments.  Defendant and Defendant-Intervenors shall have until fifteen (15) days after Plaintiffs' comments are filed to file any reply.

It is **SO ORDERED**.

  /s/ Donald C. Pogue  
Donald C. Pogue, Judge

Dated:      June 17, 2010  
            New York, N.Y.

---

object to reopening the evidentiary record. <u>I & D Mem.</u> at 16-17 ("If the Department elects not to use the mandatory respondents' calculated rates to assign a separate rate, the [separate rate] Respondents [] argue that the only alternative option is for the Department to reopen the record and allow the [separate rate] Respondents to supplement the record with company-specific, count-size information as a reliable source for calculating the separate-rate margin based on the average unit value ("AUV") to estimate U.S. price."); <u>id.</u> at 17 ("Petitioner would not be averse to reopening the record for the Department to determine the separate-rate margin based on count-size specific AUV's reported by [separate rate] Respondents.").

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____    By: _____
                                        Deputy Clerk